UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
TAYLOR & FULTON PACKING, LLC

              Plaintiff,                      Memorandum and Order
                                                          09-cv-2614

      - against -

MARCO INTERNATIONAL FOODS, LLC and
STEVEN J. POSA, JR.

              Defendants.
-------------------------------------------------------x
GLASSER, United States District Judge:

       This is an action for breach of contract and for enforcement of the statutory trust provisions of the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. §§ 499a-499t. Plaintiff, Taylor & Fulton Packing, LLC ("Taylor & Fulton" or "plaintiff"), is a produce wholesaler that sold fresh tomatoes to defendant, Marco International Foods, LLC ("Marco"), a corporation also engaged in the wholesale produce business. Taylor & Fulton moves for summary judgment against Marco and Steven J. Posa, Jr. ("Posa"), the Managing Member of Marco (collectively, "defendants"), contending that under PACA and New York state law, both defendants are liable for non-payment on produce Taylor & Fulton delivered to Marco. Plaintiff seeks to enforce its PACA trust rights and recover $125,818.44 plus additional interest, pursuant to 7 U.S.C. § 499a. Plaintiff also brings claims for (1) failure to account and pay promptly pursuant to 7 U.S.C. § 499b(4); (2) breach of Posa's fiduciary duty to PACA trust beneficiaries; and (3) state law breach of contract by Marco. Defendants have counterclaimed for losses they allegedly suffered

1

due to the poor quality of the tomatoes. For the reasons set forth below, plaintiff's motion is GRANTED.

## BACKGROUND

Unless otherwise noted, the following facts are not in dispute. Taylor & Fulton is a corporation with offices in Florida, licensed under PACA and in the business of selling wholesale quantities of perishable agricultural commodities. Compl. ¶¶ 1-2. Marco is also a corporation licensed under PACA and operates in New York as a broker in wholesale quantities of produce. Plaintiff's Rule 56.1 Statement of Material Facts ("Pl.'s R. 56.1") ¶¶ 1-2; Transcript of Order to Show Cause Hearing held July 2, 2009 ("Trans.") 16, 46. Posa is the Managing Member of Marco. Trans. 46. Plaintiff alleges that, as a result of his position, Posa was a "principal," able to control the company and any PACA trust assets. Compl. ¶¶ 2(b), 32; Pl.'s R. 56.1 ¶¶ 13-16.

Between January 7, 2009 and February 19, 2009, Taylor & Fulton sold ten shipments of Florida tomatoes to defendants with an aggregate value of $118,748.00. Compl. ¶¶ 8-11 & Ex. A; Trans. 4; Pl.'s R. 56.1 ¶¶ 3, 10. Plaintiff sent and defendants received an invoice for each load of tomatoes, invoices that included the following language:

> The perishable agricultural commodities listed on this Invoice are sold subject to the statutory trust authorized by section 5c of the Perishable Agricultural Commodities Act, 1930 (7) U.S.C. 499e(c). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

Pl.'s R. 56.1 ¶ 8; Declaration of Ed Angrisani dated June 18, 2009 ("First Angrisani Decl.") ¶ 8 & Ex. A. Defendants did not make payment on any of these shipments. Pl.'s R. 56.1 ¶¶ 11-12; Trans. 11-12.

On July 2, 2009, this Court conducted a hearing on plaintiff's motion for a preliminary injunction. At that hearing, defendant Posa testified under oath that due to frosts in Florida, the tomatoes were "sub-standard and either had to be dumped or had to be sold at greatly reduced prices." Trans. 5, 45-57. He further testified that he made complaints by telephone to Taylor & Fulton regarding the poor quality of the tomatoes and sought to re-negotiate the price, after sale. Trans. 6, 8, 15-16. He alleges that an employee of Fulton & Taylor, Ed Angrisani, agreed to reduce the bills but that these adjustments were never made. Trans. 54-55. Plaintiff denies such conversations took place. Declaration of Ed R. Angrisani dated July 1, 2009 ("Second Angrisani Decl.") ¶¶ 10-12, 15-17. Based on these contentions, defendants seek $150,000.00 in damages. Ans. & Countercl. ¶¶ 46-48.

On July 9, 2009, this Court granted a preliminary injunction, enjoining defendants from dissipating their existing PACA trust assets or disposing of corporate assets until payment of $126,387.71 plus further interest to the plaintiff or this Court.

## JURISDICTION

This Court has original jurisdiction over plaintiff's PACA claim, a claim arising under federal law. 28 U.S.C. § 1331; 7 U.S.C. § 499(e)(5) ("The several district courts of the United States are vested with jurisdiction specifically to entertain . . . actions by [PACA] trust beneficiaries to enforce payment from the trust."). The Court has

supplemental jurisdiction over plaintiff's state law breach of contract claim.[1]  Federal courts have supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  A state law claim forms part of the same controversy if the state and federal claim "derive from a common nucleus of operative fact."  United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  Here, both the federal and state claims are derived from the same alleged delivery and nonpayment of ten shipments of tomatoes.

## DISCUSSION

### I.     Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).  As an initial matter, the moving party has the burden of demonstrating that no genuine dispute of material fact exists for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not

---

[1] Because the complaint does not establish plaintiff or defendants' citizenship, plaintiff has not demonstrated there is diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  Therefore, for purposes of this motion, jurisdiction over plaintiff's state-law claim must be predicated on supplemental jurisdiction.

4

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Once the moving party has met this burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita, 475 U.S. at 586–87 (emphasis in original)). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

The Court is compelled to draw all reasonable inferences in favor of the nonmoving party, Matsushita, 475 U.S. at 586, and a genuine dispute exists if a reasonable jury could find in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50 (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247–4805. "Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth 'concrete particulars' showing that a trial is needed." R.G. Grp., Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984) (quoting S.E.C. v. Res. Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978)). It is insufficient for the nonmovant "'merely to assert a

5

conclusion without supplying supporting arguments or facts.'" BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996) (quoting Res. Automation Corp., 585 F.2d at 33).

## II. Local Civil Rule 56.1

In support of its motion, Taylor & Fulton submitted a statement pursuant to Local Rule 56.1. "Local Rule 56.1 was adopted to aid the courts in deciding summary judgment motions by quickly identifying disputed material facts." T.Y. v. N.Y. City Dep't of Educ., 584 F.3d 412, 417 (2d Cir. 2009). The Rule requires that a party moving for summary judgment submit a list of the material facts as to which there is no genuine issue to be tried, along with "citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." Loc. Civ. R. 56.1. The party opposing a motion for summary judgment must submit a corresponding statement, responding to the movant's facts, and any fact not specifically controverted is deemed admitted for purposes of summary judgment. Where the nonmovant opposes a statement of fact, his Rule 56.1 statement must also "be followed by citation to evidence which would be admissible." Local Civ. R. 56.1(d).

Defendants have failed to submit an opposing Rule 56.1 statement. "A nonmoving party's failure to respond to a Rule 56. 1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." T.Y., 584 F.3d at 418 (citing Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998)); Loc. Civ. R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for

6

purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."). See, e.g., Feis v. United States, No. 07 Civ. 2706 (JS), 2009 WL 2983026, at *1 n.2 (E.D.N.Y. Sept. 10, 2009), aff'd in relevant part, 394 Fed. App'x. 797, 799 (2d Cir. 2010) (refusing to consider as 'disputed' any of movant's Rule 56.1 statements supported by evidence, to which nonmovant objected without evidentiary support); Transp. Ins. Co. v. AARK Const. Grp., Ltd., 526 F. Supp. 2d 350, 354 n.1 (E.D.N.Y. 2007) ("Where a responding party fails to submit a responsive Rule 56.1 Statement, the Court may deem admitted all facts in the movant's statement."); AFL Fresh & Frozen Fruits & Vegetables, Inc., No. 06 Civ. 2142 (GEL), 2007 WL 4302514, at *5 (S.D.N.Y Dec. 7, 2007) (movant's Rule 56.1 statements admitted "unless specifically controverted by a correspondingly numbered paragraph in the opposing party's Rule 56.1 statement and followed by citation to evidence." (emphasis in original) (citations and quotations omitted)).

Where a nonmovant fails to file a statement or files a deficient statement, courts frequently deem all supported assertions in the movant's statement admitted and find summary judgment appropriate.² T.Y., 584 F.3d at 418 ("In the typical case, failure to

---

² Although the Court has broad discretion to overlook defendants' failure to file a Rule 56.1 statement , Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001), and may consider other admissible evidence submitted in opposition, defendants have failed to submit any admissible evidence.  Defendant Posa has filed two "declarations" in this case.  See Decl. of Stephen J. Posa, June 29, 2009 (Dkt No. 5); Decl. of Stephen J. Posa, May 22, 2011 (Dkt No. 26).  These declarations are not admissible evidence because they are neither sworn nor made under penalty of perjury, pursuant to 28 U.S.C. § 1746.
> To be admissible in a summary judgment proceeding, an affidavit must be sworn to before an officer authorized to administer oaths, such as a notary public. See Pfeil v. Rogers, 757 F.2d 850, 859 (7th Cir. 1985). Alternatively, under 28 U.S.C. § 1746, an unsworn declaration made under the penalty of perjury has the same evidentiary weight as an affidavit if it includes language in substantially the same form as "I declare (or certify, verify, or

7

respond results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met." (citation omitted)); see, e.g., Millus v. D'Angelo, 224 F.3d 137, 138 (2d Cir. 2000) (affirming grant of summary judgment where plaintiff failed to deny defendants' allegations, in accordance with Rule 56.1); EQ Transp., Inc. v. TNT Transp., Inc., No. 04 Civ. 5711 (ILG), 2005 WL 1492379, at *2 (E.D.N.Y. June 24, 2005) (deeming plaintiff's unopposed Rule 56.1 statement admitted and granting summary judgment).

Nevertheless, defendants' failure does not relieve plaintiff "of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." Holtz, 258 F.3d at 74; see also Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) ("[T]he district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." (citing Giannullo v. City of New York, 322 F.3d 139, 142 (2d Cir. 2003)).

---

state) under penalty of perjury that the foregoing is true and correct" followed by a signature and date of execution. See, e.g., LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 65–66 (2d Cir.1999) (unsworn letter that met requirements of 28 U.S.C. § 1746 deemed admissible as affidavit in summary judgment); Williams v. Elzy, No. 00 Civ. 5382 (HBP), 2003 WL 22208349, at *5 (S.D.N.Y. Sept. 23, 2003) (same).

Quintero v. Rite Aid of New York, Inc., No. 09 Civ. 6084 (JLC), 2011 WL 5529818, at *5 (E.D.N.Y. Nov. 10, 2011); see also United States v. All Right, Title & Interest in Real Prop. & Appurtenances, 77 F.3d 648, 657–58 (2d Cir.1996) ("[U]nsworn letter was an inappropriate response to the . . . motion for summary judgment, and the factual assertions made in that letter were properly disregarded by the court."). Because the Posa declarations are not admissible evidence, they cannot create genuine issues of material fact and the Court will not take them into consideration in deciding this motion.

Accordingly, the Court will only deem admitted those assertions in Taylor & Fulton's Rule 56.1 statement that are supported by admissible evidence.

### III. The Perishable Agricultural Commodities Act (PACA)

PACA was enacted in 1930 to regulate the interstate sale of perishable agricultural commodities (essentially, fruits and vegetables). The Act was amended in 1984 "upon a finding by Congress that a burden on commerce in perishable agricultural commodities was caused by certain financial arrangements, whereby dealers would receive goods without having made payment for them." Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F. Supp. 346, 347 (S.D.N.Y. 1993). To remedy this burden, Congress created an unusual statutory scheme where, "produce sellers become the beneficiaries of a constructive, statutory trust that lasts until they get paid. This trust consists of all produce-related assets, including produce inventory, receipts, and accounts receivable." Food Auth., Inc. v. Sweet & Savory Fine Foods, Inc., No. 10 Civ. 1783 (JS), 2011 WL 477714, at *1 (E.D.N.Y. Feb. 4, 2011); 7 U.S.C. § 499e(c)(2); see also Am. Banana Co., Inc. v. Republic Nat'l Bank of N.Y., 362 F.3d 33, 36-38 (2d Cir. 2004) (detailing the legislative history and statutory structure of PACA).

As a PACA trustee, "a produce buyer is charged with a duty 'to ensure that it has sufficient assets to assure prompt payment for produce and that any beneficiary under the trust will receive full payment.'" Coosemans Specialities, Inc. v. Gargiulo, 485 F.3d 701, 705 (2d Cir. 2007) (quoting D.M. Rothman & Co. v. Korea Commer. Bank of N.Y., 411 F.3d 90, 94 (2d Cir. 2005)). The buyer has a "fiduciary obligation under PACA to repay the full amount of the debt owed to the PACA beneficiary." C.H. Robinson Co. v. Alanco Corp., 239 F.3d 483, 488 (2d Cir. 2001). Under the statute, the trust is formed

at the moment the buyer receives the produce and remains in effect until the seller is paid in full. See 7 C.F.R. § 46.46(c)(1); In re Kornblum & Co., 81 F.3d 280, 286 (2d Cir. 1996).  PACA also makes it unlawful for a recipient dealer or broker to fail to make payment promptly or to fulfill any other conditions of the parties' agreement.  See 7 U.S.C. § 499b(4).  It is this final violation – failure to make payment – upon which plaintiff's motion for summary judgment is premised.

    a.  Plaintiff Has Established a PACA Trust

To establish the existence of a PACA trust, a number of statutory prerequisites must be met.

> [T]he seller must demonstrate that: (1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser of its intention to do so.

S. Katzman Produce, Inc. v. Won, No. 08 Civ. 2403 (KAM), 2009 WL 2448408, at *4 (E.D.N.Y. Aug. 7, 2009) (citing 7 U.S.C. § 499e; Family Tree Farms, LLC v. Alfa Quality Produce, Inc., No. 08 Civ. 481, 2009 WL 565568 (E.D. Ca. Mar. 5, 2009)).  None of these elements are in dispute: fresh tomatoes are clearly a "perishable agricultural commodity" pursuant to the statute; the purchaser, Marco, is a broker pursuant to PACA, Pl.'s R. 56.1 ¶ 2; the tomatoes, grown in Florida, moved in interstate commerce, Pl.'s R. 56.1 ¶ 2; no payment has been made, R. 56.1 ¶¶ 11-12; and Taylor & Fulton preserved its trust rights through the "invoice method," by including the statutory

language of 7 U.S.C. § 499e(c)(4) in each invoice, First Angrisani Decl. ¶ 8 & Ex. A. Thus, as a matter of law, plaintiff has established a statutory trust under PACA.

Equally, as a matter of law, plaintiff has established that Posa was a "principal" of Marco and personally liable for any breach of the PACA trust. The standard for a breach of fiduciary duty under PACA is distinct from the standard for piercing the corporate veil. Morris Okun, 814 F. Supp. at 348. Under PACA, the question is whether the trustee was "in a position to control the assets of the PACA trust." Coosemans Specialities, 485 F.3d at 705 (exhaustive citations omitted). If the trustee "'in any way encumbered the funds or rendered them less freely available to PACA creditors,'" then he may be personally liable. Id. at 706 (quoting D.M. Rothman & Co., 411 F.3d at 99). Not only do defendants fail to oppose plaintiff's assertion on this matter, but Posa's testimony before this Court amply demonstrated the type of control over the corporation's operations, bank accounts, and other assets to render him a principal, personally liable under PACA. See Trans. 3-6, 9-28.

Finally, plaintiff has established that defendants failed to make payment on any of the produce deliveries. Not only do defendants fail to controvert plaintiff's Rule 56.1 statement on this matter, but Posa testified that no payment was made. Although defendants have repeatedly and misleadingly stated in their pleadings that payment was made on the first two shipments, see First Posa Decl. (Dkt No. 5) ¶¶ 10-11; Second Posa Decl. (Dkt No. 26) ¶¶ 10-13, Posa admitted in his testimony those payment were for two shipments prior to January 7, 2009 that are not the subject of this suit. Trans. 11-12; see also Trans. 38 (testimony of John Moon, confirming payment was made on two deliveries that are not the subject of this suit). Posa conceded that no payment had been

11

made for any of the ten shipments that are the subject of the complaint. Trans. 11-12. For the above reasons, the Court finds that plaintiff has established, as a matter of law, the existence of a PACA trust and defendants' breach of that trust, through failure to make prompt payment.

b. Defendants' Defenses and Counterclaim

In opposing summary judgment, defendants raise state law defenses and a counterclaim. Defendants claim that they are not liable to Taylor & Fulton because plaintiff delivered non-conforming, damaged tomatoes and, as a result of the poor quality, Marco was unable to sell the tomatoes to its clients and suffered economic damages. Ans. ¶¶ 39-48. Although PACA does not address these matters, PACA did not repeal the UCC or abrogate the rights and defenses of contracting parties under state law.

> The provisions of PACA apply to [produce] transactions to the extent that the Act contains pertinent requirements or standards. See, e.g., Tray–Wrap, Inc. v. Meyer, [No. 90 Civ. 7688 (DLC),] 1994 WL 710804, at *4 (S.D.N.Y. Dec. 20, 1994), aff'd, 71 F.3d 404 (2d Cir. 1995). Otherwise, state law controls—in this case in the form of the Uniform Commercial Code ("UCC"), codified in New York as N.Y. U.C.C. Law § 4–101 et seq. See, e.g., Genecco Produce, Inc. v. Sol Group Mktg. Co., [No. 04 Civ. 6282 (CJS),] 2006 WL328385, at *4 (W.D.N.Y. Feb. 9, 2006); Tray–Wrap, 1994 WL 710804, at *4.

Condado Agroexportadora Ltda. v. USA Tropical, Inc., No. 07 Civ. 9370 (MHD), 2009 WL 2568435, at *4 (S.D.N.Y. July 6, 2009).

Because this was an "f.o.b." transaction, see First Angrisani Decl. Ex. A (listing "Sale Terms: FOB"), Trans. at 58-59, Marco bore the risk of damages caused during transportation of the tomatoes from Florida to New York. See Tray-Wrap, 1994 WL

710804, at *4. The term "f.o.b." is defined in the applicable section of the Code of Federal Regulations as meaning:

> that the produce quoted or sold is to be placed free on board the boat, car or other agency of the through land transportation at shipping point, in suitable shipping condition . . . , and that the buyer assumes all risk of damage and delay in transit not caused by the seller irrespective of how the shipment is billed.

7 C.F.R. 46.43(i). Here, plaintiff states that it "delivered conforming goods to the Company and has otherwise satisfied all conditions of the contracts." Pl.'s R. 56.1 ¶ 7. In other words, plaintiff states that it fulfilled its obligation to deliver tomatoes in suitable shipping condition to defendants' transport company. In support, plaintiff cites to the sworn testimony of John Moon, an employee of Taylor & Fulton, who testified that the tomatoes at issue were subject to a USDA "marketing order,"[3] were "inspected at shipping point by inspectors employed by the federal and state inspection service," and that all of the shipments passed inspection. Trans. 39. Under PACA, "inspection certificates . . . are 'prima-facie evidence of the truth of the statements therein contained,'" Koam Produce, Inc. v. Dimare Homestead, Inc., 329 F.3d 123, 128 (2d Cir. 2003) (quoting 7 U.S.C. § 499n(a)). Moon brought copies of those inspection reports with him to the hearing. Trans. 44. As discussed previously, because plaintiff has supported its Rule 56.1 statement with admissible evidence and because defendants

---

[3] See 7 C.F.R. § 966 (establishing a marketing order for tomatoes grown in Florida). "Marketing orders" are:
> regulations, initiated by industry and enforced by USDA, bind[ing] the entire industry in the geographical area regulated if approved by producers and the Secretary of Agriculture. Marketing orders and agreements (1) maintain the high quality of produce that is on the market; (2) standardize packages and containers; (3) regulate the flow of product to market; (4) establish reserve pools for storable commodities; and (5) authorize production research, marketing research and development, and advertising.

USDA, "Marketing Orders and Agreements," available at: http://www.ams.usda.gov/AMSv1.0/FVMarketingOrderLandingPage (last visited Dec. 9, 2011).

13

failed to file an opposing Rule 56.1 statement, defendants are deemed to have admitted that plaintiff delivered conforming goods. For these reasons, plaintiffs are entitled to judgment as a matter of law.

However, even if the Court were to overlook defendants' failure to file a Rule 56.1 statement, the record does not support defendants' defenses and counterclaim. To maintain a claim that goods are non-conforming under an f.o.b. contract, defendants have the burden of showing the tomatoes were not in "suitable shipping condition" at the time they were placed on the truck in Florida: that is, "'in such a condition at the time of shipment that it will make good delivery at contract destination.'" Tray-Wrap, 1994 WL 710804, at * 4 (quoting Lookout Mountain Tomato & Banana Co., Inc. v. Case Produce, Inc., 51 Agric. Dec. 1471, at *4 (U.S.D.A. Sept. 30, 1992)). Obviously, the most relevant evidence is the inspection at shipping point. Id. Lacking evidence of the tomatoes' condition at the point of origin, defendants have two available alternatives: defendants' could present evidence that the tomatoes were transported under normal conditions and nevertheless arrived damaged, permitting the inference that they were not in suitable condition; or – lacking evidence of transportation conditions – defendants could present evidence, such as a U.S.D.A. inspection report, demonstrating that "'the nature of the damage found at destination was such as could not have been caused or aggravated by the faulty transportation service.'" Id. at *5 (quoting Jack T. Baillie Co., Inc. v. S & K Farms, Inc., 32 Agric. Dec. 1874 (1973), citing Nikademos Dist. Co., Inc. v. D & J Tomato Co., Inc., 50 Agric. Dec. 1884 (1991), and discussing grounds for sellers' liability in the f.o.b. context); see also Frankie Boy Produce Corp. v. Sun Pacific Enter., No. 99 Civ. 10158 (DLC), 2000 WL 991507, at *3 (S.D.N.Y. July 19, 2000).

Defendants have presented no admissible evidence to support their claims. Defendants presented no evidence of the tomatoes' condition at the point of origin, did not obtain "Ryan tapes," recording the temperature of the truck transporting the tomatoes or present any other evidence of transportation conditions, Trans. at 6, and did not obtain a USDA inspection, assessing the condition of the tomatoes on arrival in Brooklyn, Trans. at 5.  The only admissible evidence in the record is Posa's testimony in which he estimated that, at some unspecified time after the tomatoes arrived in New York, he observed 30-40% decay in some of the tomatoes and "some number ones, some number twos, numbers that didn't qualify to be in the box.  In my looking at them, that's what I thought."  Trans. at 51.  Posa also testified that after Marco delivered some shipments to clients, some clients called to complain.  Trans. at 4, 51.  Even viewed in the light most favorable to the defendant, this testimony does not permit the inference that the tomatoes were not in "suitable shipping condition" at the point of origin in Florida.   Thus, even looking beyond defendants' failure to file a Rule 56.1 counterclaim, defendants have failed to present admissible evidence to support their counterclaim or defenses and plaintiffs are entitled to judgment as a matter of law.

IV.     **Interest**

Plaintiff has requested an award of pre-judgment interest in the amount of 1.5% per month after thirty days from the date on which payment was due, pursuant to the terms of the invoices.  PACA itself does not create a right to prejudgment interest but the Second Circuit has held that courts have broad discretion to award prejudgment interest to PACA claimants. See Coosemans Specialities, 485 F.3d at 709; Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc., 67 F.3d 1063, 1071–1072 (2d Cir.1995).  Courts have found that prejudgment interest is consistent with Congressional intent to protect agricultural

suppliers.  See, e.g., Endico Potatoes, Inc., 67 F.3d at 1071-72; Morris Okun, 814 F. Supp. at 351 (prejudgment interest awarded on overdue accounts based on congressional intent reflected in PACA).

Courts typically look to the contractual terms contained in the invoices when determining the appropriate award.  See, e.g., John Georgallas Banana Distrib. of N.Y., Inc. v. N & S Tropical Produce, Inc., 07 Civ. 5093, 2008 WL 2788410, at *4–5 (E.D.N.Y. July 15, 2008); Top Banana LLC v. Dom's Wholesale & Retail Ctr., No. 04 Civ. 2666 (GBD), 2005 WL 1149774, at *2 (S.D.N.Y. May 16, 2005) ("Where the parties' contracts include [interest rate] terms, they can be awarded (and are subject to the PACA trust) as sums owing in connection with perishable commodities transactions under PACA."). Here, Taylor & Fulton included the following language in its invoices: "NET DUE 21 DAYS FROM INVOICE DATE; Thereafter 1-1/2% Additional Each 30 Day Period or Portion Thereof."  First Angrisani Decl. Ex. B.

The Court finds that the terms set forth in plaintiff's invoices are enforceable. "Between merchants such as plaintiff and defendant, 'inclusion of terms in the seller's invoice, without protest from the buyer on receipt, makes the invoice terms the terms of the contract.'" S. Katzman Produce, Inc., 2009 WL 2448408 at *5 (citing Top Banana, 2005 WL 1149774, at *3 (in a PACA case, granting plaintiff-seller, inter alia, interest as specified in its invoices, which had been accepted by defendant-buyer without protest); N.Y. U.C.C. § 2–201(2)); see also Dayoub Mktg., Inc. v. S.K. Produce Corp., No. 04 Civ. 3125, 2005 WL 3006032 (S.D.N.Y. Nov. 9, 2005) (same); Brigiotta's Farmland Produce & Garden Ctr., Inc. v. Przykuta, Inc., No. 05 Civ. 273S, 2006 WL 3240729, at *5

16

(W.D.N.Y. July 13, 2006) (awarding pre-judgment interest at a rate specified in the seller's invoices, to which the defendant had not objected)).

There is no indication that defendants ever objected to the terms of plaintiff's invoices and a service charge of 1.5% per month is within the range of trade practice. See Northeast Trading, Inc. v. Ven-Co Produce, Inc. No. 09 Civ. 7767 (PGG), 2011 WL 4444511, at *5 (interest charge of 1.5% per month, or 18% per annum, is within the range of trade practice); S. Katzman Produce, Inc., 2009 WL 2448408, at *6 (same); Brigiotta's Farmland, 2006 WL 3240729, at *5-6 (same); Dayoub Mktg., 2005 WL 3006032, at *4-5 (same). Accordingly, the court finds that plaintiff is entitled to recover prejudgment interest at the rate of 1.5% per month, as specified in its invoices, in addition to the original principal amount of $118,748.00.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is GRANTED in the principal amount of $118,748.00. The Clerk of Court is directed to calculate the interest due, at the rate of 1.5% per month.

**SO ORDERED.**

Dated:     Brooklyn, New York
              December 16, 2011

                                                 /s/
                                           I. Leo Glasser, U.S.D.J.